IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ARTHUR DICKERSON<br>3750 Jameson Street, NE, Suite 528<br>Washington, DC 20018<br><br>    Plaintiff,<br><br>v.<br><br>GRANT LEADING TECHNOLOGY, LLC<br>4906 Randy Court, Suite 100<br>Riverdale, Maryland 20737<br><br>SERVE:  Prince Levy<br>4906 Randy Court, Suite 100<br>Riverdale, Maryland 20737<br><br>    Defendant. | *<br>*<br>*<br>*<br>*<br>*<br>*   Case No.:<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

Plaintiff Arthur Dickerson ("Plaintiff"), by and through his undersigned counsel, submits his Complainant and Demand for Trial by Jury against Defendant Grant Leading Technology, LLC ("Defendant"), and herein alleges and seeks recovery and relief arising from the following:

## CLAIMS PARTIES AND JURISDICTION

1.       Plaintiff's counts and claims for relief sought in this action arise from Defendant's willful and unlawful violations of Plaintiff's rights under the Rehabilitation Act of 1973 ("Rehab Act"), 29 U.S.C. § 709 *et seq*.; the Federal Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq*.; the District of Columbia Family and Medical Leave Act ("DCFMLA"), D.C. Code § 32-501, *et seq*.; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*.; the Maryland Fair Employment Practices Act ("FEPA"), Maryland Code Subtitle 6 § 20-606, et seq. ("MFEPA"), the District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-

1402.11, *et seq*., and the District of Columbia Sick Leave Act ("DCSLA"), D.C. Code § 32-531.01, *et seq*.

2.      In this action, Plaintiff alleges Counts and claims for relief against Defendant arising under laws of the United States and common and factually interrelated claims for relief against Defendant arising under the laws of Maryland and the District of Columbia.

3.      This Court properly confers "Federal Question" Jurisdiction over Plaintiff's Federal claims against Defendant this matter pursuant to 28 U.S.C. § 1331, and properly confers supplemental jurisdiction over Plaintiff's Maryland and District of Columbia claims against Defendant in this matter pursuant to 28 U.S.C. § 1367.

4.      Venue is proper in the United States District Court for the District of Maryland pursuant to 28 U.S.C. § 1391(b)(1) because Defendant is a limited liability company, formed under the laws of the State of Maryland and operating from a principal office located in Prince George's County, Maryland, and is therefore a resident of the State of Maryland.

5.      At all times relevant to this action, Defendant operated as a for-profit entity, providing information technology and related consulting services to State and Federal Government Agencies in Maryland, Virginia, and the District of Columbia.

6.      In each year during the period relevant to this action, Defendant received more than one million dollars in revenue for information technology and related consulting services provided directly to Federal Agencies of the Federal Government of the United States.

7.      During the period relevant to this action, Defendant employed approximately two hundred fifty (250) or more employees performing employment services for the benefit of Defendant and its government agency clients in Maryland, Virginia, the District of Columbia, and a variety of other states and jurisdictions.

8.      During the period relevant to this action, Defendant employed approximately fifty (50) or more employees within the District of Columbia.

9.      During the period relevant to this action, Defendant employed approximately fifty (50) or more employees within the State of Maryland.

10.      During the period relevant to this action, all employment decisions made by Defendant, including decisions related to Plaintiff's hiring, work assignments, work duties, compensation, leave requests, and termination were made by Defendant from its principal office, located in Prince George's County, Maryland.

11.      During the period relevant to this action, Plaintiff regularly and customarily attended telephonic and virtual meetings with Defendant and/or Defendant's clients hosted by Defendant from its principal office, located in Prince George's County, Maryland.

12.      During the period relevant to this action, Plaintiff performed full time employment duties (40 or more hours per week) for the benefit of Defendant as a consult/procurement consultant, assigned and stationed at the Federal Aviation Administration, in its Division of Aviation Property Management (APM - 300) located at 800 Independence Avenue, SW, Washington, DC or from his home, located within Washington, DC.

13.      The discriminatory, hostile, unlawful, and/or unlawful acts and omissions relevant to this action were ongoing and continuous from about March 2020 until the date Defendant made its official decision to terminate Plaintiff's employment, on August 25, 2021.

14.      On June 14, 2022, Two Hundred Ninety-Six (296) days after Defendant's last discriminatory act, its final termination decision of August 25, 2021, Plaintiff timely filed his Charge of Discrimination for unlawful discrimination / failure to provide a reasonable

3

Case 8:22-cv-02433-DKC   Document 1   Filed 09/25/22   Page 4 of 36


accommodation and unlawful retaliation/termination with the Equal Employment Opportunity Commission ("EEOC"), Charge Number 570-2022-02293.

15.     The EEOC issued Plaintiff his Notice of Right to Sue on June 27, 2022.

16.     Plaintiff files this Complaint and demand for trial by jury on September 25, 2022, exactly ninety (90) days after the EEOC issued Plaintiff his Notice of Right to Sue.

17.     Plaintiff has fully and timely complied with all exhaustion requirements operating as a condition precedent to Plaintiff's right to seek relief on all Counts included in this action requiring a pre-suit exhaustion of administrative remedies.

18.     Plaintiff has timely filed this action such that Plaintiff is entitled to relief and damages for all counts included in this Complaint.

**FACTS**

19.     Plaintiff commenced his employment with Defendant in or about May 2019.

20.     Defendant informed Plaintiff of its final decision to terminate Plaintiff's employment on August 25, 2021.

21.     During the period from at least May 2019 through the present, Plaintiff has suffered epileptic seizures, insomnia, and anxiety and panic attacks and an associated mental health diagnosis / disorder, exacerbated by work-related stress and demands, causing Plaintiff to miss multiple day periods of work, one (1) to two (2) hospitalizations during the period of Plaintiff's employment, and requires ongoing medical monitoring, intervention, and treatment.

22.     During the period from at least May 2019 through the present, Plaintiff has suffered from a disability arising from intractable migraines, for which Plaintiff receives neurology, medications, and injection therapy.  Plaintiff's intractable migraine disability is triggered by loud noise and bright lights.

23.     During the period from at least May 2019 through the present, Plaintiff has suffered from a disability arising from gastroenterological complications from prior surgery, for which Plaintiff receives ongoing treatment and consultation with gastrointestinal specialists.

24.     During the period from at least May 2019 through the present, Plaintiff has suffered from a disability arising from lumbar radiculopathy and lumbar disc herniation, for which Plaintiff receives ongoing treatment through physical therapy, medication, injections, and pain management treatments and consultations.

25.     During the period from at least May 2019 through the present, Plaintiff regularly informed Plaintiff regularly discussed and/or informed Defendant's employees, including Marcus Brandon Nicholas, and FAA employees, including Bunmi Shofo, that he suffered from disabilities and that complications related to his disabilities required Plaintiff to miss work and/or telework, limited Plaintiff's ability to participate in back-to-back meetings and/or take periodic rest and/or breaks during the day, requiring a flexible schedule when disability related complications and/or treatment and/or testing so required.

25.     In or about September 2019, Plaintiff put Defendant on notice of his disabilities when he informed Defendant that complications related to his disabilities required Plaintiff to miss work and/or telework and/or take period rest and/or breaks during the day, requiring a flexible work schedule while undergoing a three (3) day medical testing and/or treatment.

26.     In or about January 2020, Plaintiff put Defendant on notice of his disabilities when he informed Defendant that complications related to his disabilities required Plaintiff to miss work and/or telework and/or take period rest and/or breaks during the day, requiring a flexible schedule while undergoing testing and/or treatment.

27.     On or about March 4, 2020, Plaintiff emailed Ivan Stantchev, Defendant's Human Resources Director ("Mr. Stantchev"), Rishi Mattoo, Defendant's Vice President ("Mr. Mattoo"), and Jamel Cornish, Defendant's Team Leader/Acquisitions Consultant ("Mr. Cornish") while out on sick leave due to complications arising from Plaintiff's disability and therein informed Defendant of Plaintiff's need for Defendant to provide Plaintiff with medically necessary workplace accommodations for Plaintiff perform the essential functions of his job duties for Defendant and/or its client(s).

28.     Thereafter, and following Defendant's request for the same, on or about March 17, 2020, Plaintiff provided Defendant with poof of his disabilities and medically necessary workplace accommodation needs from licensed physician, Vijay Shri Kannan, MD.

29.     As to Plaintiff's intractable migraine and gastrointestinal disability, the medically necessary workplace accommodation necessary for Plaintiff, as affirmed by Dr. Kannan, was for Plaintiff to perform his employment duties by teleworking.

30.     As to Plaintiff's lumbar radiculopathy and lumbar disc herniation disability, the medically necessary workplace accommodation necessary for Plaintiff, as affirmed by Dr. Kannan, was for Defendant to provide Plaintiff with an ergonomic workstation, limited driving, limited travel, and a sit to stand desk.

31.     In addition to Dr. Kannan's letter, as early as March 2020 and on several occasions thereafter, Plaintiff engaged in verbal conversations with Mr. Mattoo wherein Plaintiff informed Mr. Mattoo that when Plaintiff suffered seizures, flare-ups, and/or episodes related and/or arising from migraines and/or gastrointestinal complications and/or related disabilities, and that as a result, Plaintiff requires a medically necessary workplace accommodation preventing a requirement Plaintiff attend back-to-back meetings and permitting Plaintiff to take

partial and/or full-day leave for treatment and/or recovery, requiring a flexible work schedule permitting Plaintiff take leave and/or breaks during work days and to perform and/or make-up work outside of core work hours and/or core work days.

32.     At no time after Defendant's receipt notice of Plaintiff's disabilities and need for medically necessary workplace accommodations did Defendant meet with Plaintiff to discuss the limitations of his disabilities or otherwise act to engage Plaintiff in an interactive process to provide Plaintiff medically appropriate, reasonable, and necessary workplace accommodations expressly requested by Plaintiff and/or his physician to permit Plaintiff to perform the essential functions of his job duties.

33.     In March 20220, at or about the time Plaintiff provided Defendant with the letter from Dr. Kannan and Plaintiff's initial verbal conversations with Mr. Mattoo identifying medically necessary workplace accommodations, the COVID-19 Pandemic commenced, resulting in Defendant directing Plaintiff and Defendant's other employees to telework from home for the performance of their work duties and limiting and/or suspending travel.

34.     Following the time Plaintiff placed Defendant on notice of his disabilities and workplace accommodation request, Defendant regularly scheduled mandatory virtual meetings during core work hours, 8:00 AM – 5:00 PM, often preventing Plaintiff from taking medically necessary work breaks during the day and requiring Plaintiff to attend back-to-back meetings, further exacerbating his disabilities and putting Plaintiff's health and welfare at serious risk.

35.     On several occasions during the period March 2020 through at least June 2021, Plaintiff advised Defendant that he was suffering from and illness and/or complications arising from his disabilities and was not physically able to attend the virtual meeting because of his medical condition.

36.     On instances where Plaintiff informed Defendant that his disabilities, complications and/or recovery related thereto and/or medical condition prevented his attendance at the meetings, Defendant continued to press and pressure Plaintiff to attend the meetings notwithstanding his medical condition, requiring Plaintiff to attend meetings to the detriment of his personal health and welfare.

37.     On instances where Plaintiff could not attend virtual meetings, Defendant subjected Plaintiff to adverse employment actions and/or treatment, including stripping Plaintiff of workplace tasks, responsibilities, and associated opportunities for workplace advancement.

38.     On instances where Plaintiff informed Defendant that his disability and/or complications and/or recovery related to his disability caused Plaintiff to need to miss meetings and/or take medically necessary leave from work, Defendant subjected Plaintiff to and/or knowingly permitted Defendant's employees and/or FAA employees to subject Plaintiff to harassment, insults, and belittlement because of and/or arising from Plaintiff's disability and/or need for medical leave and/or medically necessary accommodations and/or Defendant and/or its agents and/or manger's and/or FAA and/or its employee's perception of the same during the period of Plaintiff's employment.

39.     At all times during Plaintiff's period of employment, Plaintiff performed all of his job duties at levels that met or exceeded Defendant's workplace expectations.

40.     In or about March or April 2021, Defendant provided Plaintiff with a performance review affirming that Plaintiff was performing his job duties at levels Defendant evaluated as satisfactorily and/or above satisfactory and provided Plaintiff with a compensation increase.

41.     On June 7, 2021, Plaintiff suffered an episodic flare up and/or seizure arising from and/or related to his disabilities for which Plaintiff's physical recommended Plaintiff take several days of medical leave until Plaintiff's physician cleared Plaintiff to return to work.

42.     On June 7, 2021, Plaintiff emailed Defendant advising Defendant that he was ill and/or recovering and that he would be out from work arising from his illness.

43.     On June 7, 2021, Defendant had knowledge that Plaintiff's illness and leave arising therefrom was directly caused by and/or related to his disabilities and/or complications arising therefrom.

44.     For the next several days, Defendant inquired about Plaintiff's health status and Plaintiff promptly responded informing Defendant that his illness and/or recovery was continuing and that he was not able to work during this temporary basis because of his health condition.

45.     At no time during the period Plaintiff was out on sick leave did Defendant expressly ask Plaintiff for proof from Plaintiff and/or Plaintiff's medical provider of the date Plaintiff would return to work.

46.     At no time during the period Plaintiff was out on sick leave did Defendant or Plaintiff reasonably believe that Plaintiff's illness and/or recovery would cause Plaintiff to miss more than one (1) to two (2) weeks of work while on medical leave.

47.     While Plaintiff was out on medical leave, Defendant scheduled a virtual meeting for Plaintiff for June 11, 2021, with Mr. Stantchev and Brandon Fogarty, Defendant's Senior Manager.

48.     During the meeting on June 11, 2021, Mr. Santchev informed Plaintiff of Defendant's decision to terminate Plaintiff's employment, stating unsatisfactory job performance as the basis for the decision.

49.     Plaintiff immediately appealed the termination decision to Mr. Mattoo and Prince Levy, Defendant's President and Chief Executive Officer, citing the decision as unlawful, discriminatory and retaliatory motivated by Plaintiff's disability, need for an accommodation, and/or taking of medical leave, and predicated upon false facts, namely that Plaintiff was, in fact, performing his job duties at or above the satisfactory level.

50.     Upon Plaintiff's appeal, Defendant held the termination decision in abeyance until such time as Mr. Levy was satisfied with a review of Plaintiff's position and the facts available to evaluate whether Defendant wished to go ahead with the termination.

51.     On August 25, 2021, Defendant, through Mr. Stanchev, emailed Plaintiff and informed Plaintiff that Defendant and Mr. Levy had considered the termination decision and that Defendant officially decided that Plaintiff's employment was terminated and, in the same correspondence, requested Plaintiff return all property of Defendant and/or the FAA.

52.     Defendant's decision to terminate Plaintiff's employment was unlawful, discriminatory, and retaliatory, and was motivated by Defendant's bias against Plaintiff arising from Plaintiff's disability, need and/or request for an accommodation, and/or taking of medical leave, was predicated upon pretext and false facts, and cause Plaintiff to suffer substantial harm.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF THE REHAB ACT
### (Discrimination Based on Disability / Unlawful Retaliation)

53.     Plaintiff re-alleges and incorporates by reference each allegation in the foregoing paragraphs.

54.     At all relevant times, Defendant was Plaintiff's employer within the meaning of the Rehab Act.

55.     At all relevant times, Plaintiff was Defendant's employee within the meaning of the Rehab Act.

56.     At all relevant times, the Rehab Act prohibited Plaintiff from discharging or otherwise discriminating against Plaintiff, a qualified employee, on the basis of Plaintiff's disability.

57.     At all relevant times, Plaintiff had and continues to have a disability within the meaning of the Rehab Act.

58.     At all relevant times, Defendant had actual knowledge that Plaintiff had a disability within the meaning of the Rehab Act.

59.     From the period March 2020 through the date Defendant made its final decision terminating Plaintiff's employment on August 25, 2021, Defendant had actual knowledge that with the assistance of Plaintiff's expressly requested medically necessary reasonable accommodations, Plaintiff was qualified for and fully capable of performing all essential functions of his job duties for the benefit of Defendant and its client(s) with his expressly requested and medically necessary reasonable accommodation.

60.     From the period March 2020 through the date Defendant made its final decision terminating Plaintiff's employment on August 25, 2021, Defendant interfered with and/or denied Plaintiff his medically necessary reasonable accommodation.

61.     From the period March 2020 through the date Defendant made its final decision terminating Plaintiff's employment on August 25, 2021, Plaintiff engaged in a protected activity by putting Defendant on notice of his disability and requesting reasonable accommodations for his disability to permit his to perform the essential functions of his job duties for Defendant and its client(s).

62.     From the period March 2020 through the date Defendant made its final decision terminating Plaintiff's employment on August 25, 2021, Defendant interfered with and/or failed and/or refused provide Plaintiff with and/or honor and implement Plaintiff's medically necessary workplace accommodation and subjected Plaintiff harassment, insults, and belittlement of Plaintiff because of and/or arising from Plaintiff's disability and/or Defendant and/or its agents and/or manger's perception of the same during the period of Plaintiff's employment as described above were (i) unwelcome, (i) were of hostile and discriminatory in nature; (iii) were severe, pervasive, and did, in fact, alter the conditions of Plaintiff's employment with Defendant to create a hostile and abusive working environment, and (4) were known, permitted, and imputable to Defendant.

63.     The acts and actions taken by Defendant, including Defendant's interference with and/or failure and/or refusal to provide Plaintiff with and/or honor and implement Plaintiff's medically necessary workplace accommodation and harassment, insults, and belittlement of Plaintiff because of and/or arising from Plaintiff's disability and/or Defendant and/or its agents and/or manger's perception of the same during the period of Plaintiff's employment would not have occurred but for the fact Plaintiff is an individual with a diagnosed with a disability that required an expressly requested medically necessary reasonable workplace accommodation to perform the essential functions of his job while employed by Defendant.

64.     The acts and actions taken by Defendant, including Defendant's interference with and/or failure and/or refusal to provide Plaintiff with and/or honor and implement Plaintiff's medically necessary workplace accommodation and harassment, insults, and belittlement of Plaintiff because of and/or arising from Plaintiff's disability and/or Defendant and/or its agents and/or manger's perception of the same during the period of Plaintiff's employment made Plaintiff think and feel that his work environment with Defendant was hostile and/or abusive on the basis of his disability.

65.     The acts and actions taken by Defendant, including Defendant's interference with and/or failure and/or refusal to provide Plaintiff with and/or honor and implement Plaintiff's medically necessary workplace accommodation and harassment, insults, and belittlement of Plaintiff because of and/or arising from Plaintiff's disability and/or Defendant and/or its agents and/or manger's perception of the same during the period of Plaintiff's employment were objectively hostile and/or abusive on the basis of disability to a reasonable person.

66.     The acts and actions taken by Defendant, including Defendant's interference with and/or failure and/or refusal to provide Plaintiff with and/or honor and implement Plaintiff's medically necessary workplace accommodation and harassment, insults, and belittlement of Plaintiff because of and/or arising from Plaintiff's disability and/or Defendant and/or its agents and/or manger's perception of the same during the period of Plaintiff's employment and Defendant's termination of Plaintiff's employment arising Plaintiff's complaints and protestation to Defendant relating to and arising from the same, was hostile, severe, outrageous, discriminatory, and retaliatory against Plaintiff and were taken and carried out by Defendant with malice or reckless indifference to Plaintiff's workplace rights under the Rehab Act.

67.     As a direct and proximate result of Defendant's hostile, severe, discriminatory, and retaliatory actions taken against Plaintiff because of his disability and medically necessary workplace accommodation requests and for engaging in a protected activity of complaining and protesting the same, Defendant violated Plaintiff's rights under the Rehab Act in the form of (i) workplace demotions and/or missed workplace opportunities for advancement; (ii) unlawful disability discrimination; (iii) unlawful denial of a medically necessary workplace accommodation;  (iv) disability-based hostile work environment; and (v) unlawful retaliation / termination of Plaintiff's employment.

68.     Defendant's acts of discrimination,  harassment / hostile work environment, and retaliation/termination have directly and proximately caused Plaintiff to suffer substantial emotional damages, including anxiety, panic attacks, lack of sleep, nightmares, and general sadness, resulting in Plaintiff withdrawing and declining opportunities to engage in social and other previously preferred activities, financial loss arising including lost wages and future medical expenses associated with mental health treatment to address emotional damages caused by Defendant in violation of the Rehab Act.

69.     As a direct and proximate result of the illegal employment discrimination by Defendant, Plaintiff has suffered, and continues to suffer, lost back and future wages, severe pain and suffering and extreme mental anguish and emotional distress and has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities.

### COUNT II
### VIOLATION OF THE FMLA
**(Interference / Denial with FMLA Rights / Interference with FMLA Rights — Failure to Provide Notice / Retaliation / Discharge Based on Taking FMLA Leave)**

70.     Plaintiff re-alleges and incorporates by reference each allegation in the foregoing paragraphs.

71.     At all relevant times, Defendant was an eligible employer under the FMLA.

72.     At all relevant times, Plaintiff was an eligible employee under the FMLA.

73.     As a FMLA eligible employee, Plaintiff was entitled to twelve (12) weeks of medical leave for a serious health condition that made him unable to perform the functions of his position.

74.     Pursuant to the FMLA, upon Plaintiff's return from FMLA leave, Plaintiff was entitled to be reinstated to his previous employment position with Defendant which he held when his leave commenced, or an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.

75.     The FMLA prohibits an employer from retaliating against an employee within the meaning of the FMLA.

76.     Under the FMLA, an employer retaliates against an employee within the meaning of the FMLA where an employer terminates an employee for engaging in a protected activity. Taking FMLA leave constitutes a protected activity within the meaning of the FMLA.

77.     In or about June 2021, Plaintiff exercised his rights under the FMLA by requesting and taking medically necessary FMLA leave for the purpose of seeking treatment and recovering from complications from his disability.

78.     After Defendant was on notice of Plaintiff's request and need for FMLA leave, Defendant failed to provide Plaintiff with any eligibility notice, rights and responsibilities notice or designation notice as required by the FMLA; nor did Defendant offer Plaintiff FMLA leave for his serious medical condition.

79.     By failing to provide Plaintiff with any of the required FMLA notices, Defendant, willfully and in bad faith, interfered with, restrained or denied Plaintiff's exercise

15

of his FMLA rights.

80.     On June 11, 2021, Defendant informed Plaintiff of its intent to terminate
Plaintiff's employment while Plaintiff was out on medical leave and less than one (1) week after
Plaintiff informed Defendant of his need to take medically necessary MFLA leave.

81.     On August 25, 2022, Defendant informed Plaintiff of its official decision to
terminate Plaintiff's employment while Plaintiff was out on medical leave and less than twelve
(12) weeks after Plaintiff informed Defendant of his need to take medically necessary MFLA
leave.

82.     Defendant's decision to recommend termination and final decision to terminate
Plaintiff's employment was motivated and caused by Defendant's retaliatory motive for
Plaintiff's request for and/or taking FMLA leave and was willful and in bad faith.

83.     In failing to provide Plaintiff with required FMLA leave notices and thereafter
terminating Plaintiff's employment while Plaintiff was out on medically necessary FMLA leave
and within the FMLA protected leave period, Defendant willfully, and in bad faith, interfered
with, restrained or denied Plaintiff's exercise of his FMLA rights, both by interfering with his
right to take FMLA leave and by failing to restore Plaintiff to either his previous position or a
substantially equivalent position.

84.     As a result of Defendant's willful and bad faith interference with Plaintiff's
FMLA rights, Plaintiff has suffered, and continues to suffer, lost back and future wages, severe
pain and suffering and extreme mental anguish and emotional distress and has suffered and will
continue to suffer a loss of earnings and other employment benefits and job opportunities.

<u>COUNT III</u>
**VIOLATION OF THE DCFMLA**
**(Interference / Denial with DCFMLA Rights / Interference with DCFMLA Rights —**
**Failure to Provide Notice / Retaliation / Discharge Based on Taking FMLA Leave)**

85.     Plaintiff re-alleges and incorporates by reference each allegation in the foregoing paragraphs.

86.     At all relevant times, Defendant was an eligible employer under the DCFMLA.

87.     At all relevant times, Plaintiff was an eligible employee under the DCFMLA.

88.     As a DCFMLA eligible employee, Plaintiff was entitled to sixteen (16) weeks of medical leave for a serious health condition that made him unable to perform the functions of his position.

89.     Pursuant to the DCFMLA, upon Plaintiff's return from DCFMLA leave, Plaintiff was entitled to be reinstated to his previous employment position with Defendant which he held when his leave commenced, or an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.

90.     The DCFMLA prohibits an employer from retaliating against an employee within the meaning of the DCFMLA.

91.     Under the DCFMLA, an employer retaliates against an employee within the meaning of the DCFMLA where an employer terminates an employee for engaging in a protected activity. Taking DCFMLA leave constitutes a protected activity within the meaning of the DCFMLA.

92.     In or about June 2021, Plaintiff exercised his rights under the DCFMLA by requesting and taking medically necessary DCFMLA leave for the purpose of seeking treatment and recovering from complications from his disability.

93.     After Defendant was on notice of Plaintiff's request and need for DCFMLA

17

leave, Defendant failed to provide Plaintiff with any eligibility notice, rights and responsibilities notice or designation notice as required by the DCFMLA; nor did Defendant offer Plaintiff DCFMLA leave for his serious medical condition.

94.     By failing to provide Plaintiff with any of the required DCFMLA notices, Defendant, willfully and in bad faith, interfered with, restrained or denied Plaintiff's exercise of his DCFMLA rights.

95.     On June 11, 2021, Defendant informed Plaintiff of its intent to terminate Plaintiff's employment while Plaintiff was out on medical leave and less than one (1) week after Plaintiff informed Defendant of his need to take medically necessary DCMFLA leave.

96.     On August 25, 2022, Defendant informed Plaintiff of its official decision to terminate Plaintiff's employment while Plaintiff was out on medical leave and less than twelve (12) weeks after Plaintiff informed Defendant of his need to take medically necessary DCMFLA leave.

97.     Defendant's decision to recommend termination and final decision to terminate Plaintiff's employment was motivated and caused by Defendant's retaliatory motive for Plaintiff's request for and/or taking DCFMLA leave and was willful and in bad faith.

98.     In failing to provide Plaintiff with required DCFMLA leave notices and thereafter terminating Plaintiff's employment while Plaintiff was out on medically necessary DCFMLA leave and within the DCFMLA protected leave period, Defendant willfully, and in bad faith, interfered with, restrained or denied Plaintiff's exercise of his DCFMLA rights, both by interfering with his right to take DCFMLA leave and by failing to restore Plaintiff to either his previous position or a substantially equivalent position.

99.     As a result of Defendant's willful and bad faith interference with Plaintiff's

DCFMLA rights, Plaintiff has suffered, and continues to suffer, lost back and future wages,

severe pain and suffering and extreme mental anguish and emotional distress and has suffered

and will continue to suffer a loss of earnings and other employment benefits and job

opportunities.

<u>**COUNT IV**</u>
**VIOLATION OF THE ADA**
**(Discrimination Based on Disability / Failure to Provide Reasonable Accommodation /**
**Retaliation for Requesting Reasonable Accommodation)**

100.    Plaintiff re-alleges and incorporates by reference each allegation in the foregoing

paragraphs.

101.    At all relevant times, Defendant was Plaintiff's employer within the meaning of

the ADA.

102.    At all relevant times, Plaintiff was Defendant's employee within the meaning

of the ADA.

103.    At all relevant times, the ADA prohibited Plaintiff from discharging or otherwise

discriminating against Plaintiff, a qualified employee, on the basis of actual or perceived

disability.

104.    At all relevant times, Plaintiff had and continues to have a disability within the

meaning of the ADA.

105.    At all relevant times, Defendant had actual knowledge that Plaintiff had a

disability within the meaning of the ADA.

106.    From the period March 2020 through the date Defendant made its final decision

terminating Plaintiff's employment on August 25, 2021, Defendant had actual knowledge that

with the assistance of Plaintiff's expressly requested medically necessary reasonable

accommodations, Plaintiff was qualified for and fully capable of performing all essential

functions of his job duties for the benefit of Defendant and its client(s) at a level meeting or exceeding all essential requirements of his job duties, with his expressly requested and medically necessary reasonable accommodation, within the meaning of the ADA.

107.    The ADA prohibits an employer from refusing to make a reasonable accommodation to an otherwise qualified employee with a disability.

108.    The ADA requires and required Defendant to engage in an interactive process actively and voluntarily upon notice of his disability and/or requested and medically necessary accommodation to implement a reasonable and medically necessary reasonable accommodation that permits Plaintiff to perform the essential functions of his job duties for the benefit of Defendant and its clients(s) in a manner meeting the workplace needs of Defendant and its client(s).

109.    From the period March 2020 through the date Defendant made its final decision terminating Plaintiff's employment on August 25, 2021, Defendant denied Plaintiff his medically necessary reasonable accommodation and willfully refused to engage in the interactive process with Plaintiff.

110.    From the period March 2020 through the date Defendant made its final decision terminating Plaintiff's employment on August 25, 2021, Plaintiff engaged in a protected activity by requesting reasonable accommodations for his disability from Defendant.

111.    From the period March 2020 through the date Defendant made its final decision terminating Plaintiff's employment on August 25, 2021, Defendant failed and/or refused to engage in an interactive process to provide Plaintiff an appropriate and medically necessary workplace accommodation, provide Plaintiff with and/or honor and implement Plaintiff's medically necessary workplace accommodation and harassment, insults, and belittlement of

Plaintiff because of and/or arising from Plaintiff's disability and/or Defendant and/or its agents and/or manger's perception of the same during the period of Plaintiff's employment as described above were (i) unwelcome, (i) were of hostile and discriminatory in nature; (iii) were severe, pervasive, and did, in fact, alter the conditions of Plaintiff's employment with Defendant to create a hostile and abusive working environment, and (4) were known, permitted, and imputable to Defendant.

112.    The acts and actions taken by Defendant, including Defendant's failure and/or refusal to engage Plaintiff in an interactive process to provide Plaintiff an appropriate and medically necessary workplace accommodation, refusal to provide Plaintiff with and/or honor and implement Plaintiff's medically necessary workplace accommodation and harassment, insults, and belittlement of Plaintiff because of and/or arising from Plaintiff's disability and/or Defendant and/or its agents and/or manger's perception of the same during the period of Plaintiff's employment were known and reasonably foreseeable to Defendant based on Defendant's failure to honor and/or adhere to Plaintiff's request for a medically necessary reasonable workplace accommodation and/or to take reasonable and/or effective action to stop or prevent Defendant and/or its agents and/or managers acts and actions and/or to reasonably protect Plaintiff from the same.

113.    The acts and actions taken by Defendant, including Defendant's failure and/or refusal to engage Plaintiff in an interactive process to provide Plaintiff an appropriate and medically necessary workplace accommodation, refusal to provide Plaintiff with and/or honor and implement Plaintiff's medically necessary workplace accommodation and harassment, insults, and belittlement of Plaintiff because of and/or arising from Plaintiff's disability and/or Defendant and/or its agents and/or manger's perception of the same during the period of

Plaintiff's employment would not have occurred but for the fact Plaintiff is an individual with a diagnosed with a disability that required an expressly requested medically necessary reasonable workplace accommodation to perform the essential functions of his job duties while employed by Defendant.

114.    The acts and actions taken by Defendant, including Defendant's including Defendant's failure and/or refusal to engage Plaintiff in an interactive process to provide Plaintiff an appropriate and medically necessary workplace accommodation, refusal to provide Plaintiff with and/or honor and implement Plaintiff's medically necessary workplace accommodation and harassment, insults, and belittlement of Plaintiff because of and/or arising from Plaintiff's disability and/or Defendant and/or its agents and/or manger's perception of the same during the period of Plaintiff's employment made Plaintiff think and feel that his work environment with Defendant was hostile and/or abusive on the basis of his disability.

115.    The acts and actions taken by Defendant, including Defendant's refusal to provide Plaintiff with and/or honor and implement Plaintiff's medically necessary workplace accommodation and harassment, insults, and belittlement of Plaintiff because of and/or arising from Plaintiff's disability and/or Defendant and/or its agents and/or manger's perception of the same during the period of Plaintiff's employment were objectively hostile and/or abusive on the basis of disability to a reasonable person.

116.    The acts and actions taken by Defendant, including Defendant's including Defendant's failure and/or refusal to engage Plaintiff in an interactive process to provide Plaintiff an appropriate and medically necessary workplace accommodation, refusal to provide Plaintiff with and/or honor and implement Plaintiff's medically necessary workplace accommodation and harassment, insults, and belittlement of Plaintiff because of and/or arising from Plaintiff's

disability and/or Defendant and/or its agents and/or manger's perception of the same during the period of Plaintiff's employment as described above were and Plaintiff's complaints and protestation of the same to Defendant, as described above, directly caused, motivated, and resulted in Defendant's termination of Plaintiff's employment.

117.    The acts and actions taken by Defendant, including Defendant's including Defendant's failure and/or refusal to engage Plaintiff in an interactive process to provide Plaintiff an appropriate and medically necessary workplace accommodation, refusal to provide Plaintiff with and/or honor and implement Plaintiff's medically necessary workplace accommodation and harassment and belittlement of Plaintiff because of and/or arising from Plaintiff's disability and/or Defendant and/or its agents and/or manger's perception of the same during the period of Plaintiff's employment as described above were and Defendant's termination of Plaintiff's employment arising Plaintiff's complaints and protestation to Defendant relating to and arising from the same, was hostile, severe, outrageous, discriminatory, and retaliatory against Plaintiff and were taken and carried out by Defendant with malice or reckless indifference to Plaintiff's workplace rights under the ADA.

118.    As a direct and proximate result of Defendant's hostile, severe, discriminatory, and retaliatory actions taken against Plaintiff because of his disability, Defendant's failure and/or refusal to engage Plaintiff in an interactive process to provide Plaintiff an appropriate and medically necessary workplace accommodation requests for his medically necessary workplace accommodation, and for engaging in a protected activity of complaining and protesting the same, Defendant violated Plaintiff's rights under the ADA in the form of (i) unlawful disability discrimination; (ii) unlawful refusal to engage in an interactive process; (iii) unlawful denial of a

medically necessary workplace accommodation;  (iv) disability-based hostile work environment; and (v) unlawful retaliation / termination of Plaintiff's employment.

119.    Defendant's acts of discrimination,  harassment / hostile work environment, and retaliation/termination have directly and proximately caused Plaintiff to suffer substantial emotional damages, including anxiety, panic attacks, lack of sleep, nightmares, and general sadness, resulting in Plaintiff withdrawing and declining opportunities to engage in social and other previously preferred activities, financial loss arising including lost wages and future medical expenses associated with mental health treatment to address emotional damages caused by Defendant.

### COUNT V
### VIOLATION OF THE MFEPA
**(Discrimination Based on Disability / Failure to Provide Reasonable Accommodation / Retaliation for Requesting Reasonable Accommodation)**

120.    Plaintiff re-alleges and incorporates by reference each allegation in the foregoing paragraphs.

121.    At all relevant times, Defendant was Plaintiff's employer within the meaning of the MFEPA.

122.    At all relevant times, Plaintiff was Defendant's employee within the meaning of the MFEPA.

123.    At all relevant times, the MFEPA prohibited Plaintiff from discharging or otherwise discriminating against Plaintiff, a qualified employee, on the basis of actual or perceived disability.

124.    At all relevant times, Plaintiff had and continues to have a disability within the meaning of the MFEPA.

125.    At all relevant times, Defendant had actual knowledge that Plaintiff had a disability within the meaning of the MFEPA.

126.    From the period March 2020 through the date Defendant made its final decision terminating Plaintiff's employment on August 25, 2021, Defendant had actual knowledge that with the assistance of Plaintiff's expressly requested medically necessary reasonable accommodations, Plaintiff was qualified for and fully capable of performing all essential functions of his job duties for the benefit of Defendant and its client(s) at a level meeting or exceeding Defendant's workplace requirements, with his expressly requested and medically necessary reasonable accommodation, within the meaning of the MFEPA.

127.    The MFEPA prohibits an employer from refusing to make a reasonable accommodation to an otherwise qualified employee with a disability.

128.    The MFEPA requires and required Defendant to engage in an interactive process actively and voluntarily upon notice of his disability and/or requested and medically necessary accommodation to implement a reasonable and medically necessary reasonable accommodation that permits Plaintiff to perform the essential functions of his job duties for the benefit of Defendant and its clients(s) in a manner meeting the workplace needs of Defendant and its client(s).

129.    From the period March 2020 through the date Defendant made its final decision terminating Plaintiff's employment on August 25, 2021, Defendant denied Plaintiff his medically necessary reasonable accommodation and willfully refused to engage in the interactive process with Plaintiff.

130.     From the period March 2020 through the date Defendant made its final decision terminating Plaintiff's employment on August 25, 2021, Plaintiff engaged in a protected activity by requesting reasonable accommodations for his disability from Defendant.

131.     From the period March 2020 through the date Defendant made its final decision terminating Plaintiff's employment on August 25, 2021, Defendant failed and/or refused to engage in an interactive process to provide Plaintiff an appropriate and medically necessary workplace accommodation, provide Plaintiff with and/or honor and implement Plaintiff's medically necessary workplace accommodation and harassment, insults, and belittlement of Plaintiff because of and/or arising from Plaintiff's disability and/or Defendant and/or its agents and/or manger's perception of the same during the period of Plaintiff's employment as described above were (i) unwelcome, (i) were of hostile and discriminatory in nature; (iii) were severe, pervasive, and did, in fact, alter the conditions of Plaintiff's employment with Defendant to create a hostile and abusive working environment, and (4) were known, permitted, and imputable to Defendant.

132.     The acts and actions taken by Defendant, including Defendant's failure and/or refusal to engage Plaintiff in an interactive process to provide Plaintiff an appropriate and medically necessary workplace accommodation, refusal to provide Plaintiff with and/or honor and implement Plaintiff's medically necessary workplace accommodation and harassment, insults, and belittlement of Plaintiff because of and/or arising from Plaintiff's disability and/or Defendant and/or its agents and/or manger's perception of the same during the period of Plaintiff's employment as described above were known and reasonably foreseeable to Defendant based on Defendant's failure to honor and/or adhere to Plaintiff's request for a medically necessary reasonable workplace accommodation and/or to take reasonable and/or effective action

to stop or prevent Defendant and/or its agents and/or managers acts and actions and/or to reasonably protect Plaintiff from the same.

133.    The acts and actions taken by Defendant, including Defendant's failure and/or refusal to engage Plaintiff in an interactive process to provide Plaintiff an appropriate and medically necessary workplace accommodation, refusal to provide Plaintiff with and/or honor and implement Plaintiff's medically necessary workplace accommodation and harassment, insults, and belittlement of Plaintiff because of and/or arising from Plaintiff's disability and/or Defendant and/or its agents and/or manger's perception of the same during the period of Plaintiff's employment as described above would not have occurred but for the fact Plaintiff is an individual with a diagnosed with a disability that required an expressly requested medically necessary reasonable workplace accommodation to perform the basic and essential functions of his job duties while employed by Defendant.

134.    The acts and actions taken by Defendant, including Defendant's including Defendant's failure and/or refusal to engage Plaintiff in an interactive process to provide Plaintiff an appropriate and medically necessary workplace accommodation, refusal to provide Plaintiff with and/or honor and implement Plaintiff's medically necessary workplace accommodation and harassment, insults, and belittlement of Plaintiff because of and/or arising from Plaintiff's disability and/or Defendant and/or its agents and/or manger's perception of the same during the period of Plaintiff's employment as described above made Plaintiff think and feel that his work environment with Defendant was hostile and/or abusive on the basis of his disability.

135.    The acts and actions taken by Defendant, including Defendant's refusal to provide Plaintiff with and/or honor and implement Plaintiff's medically necessary workplace accommodation and harassment, insults, and belittlement of Plaintiff because of and/or arising

from Plaintiff's disability and/or Defendant and/or its agents and/or manger's perception of the same during the period of Plaintiff's employment as described above were objectively hostile and/or abusive on the basis of disability to a reasonable person.

136.    The acts and actions taken by Defendant, including Defendant's including Defendant's failure and/or refusal to engage Plaintiff in an interactive process to provide Plaintiff an appropriate and medically necessary workplace accommodation, refusal to provide Plaintiff with and/or honor and implement Plaintiff's medically necessary workplace accommodation and harassment, insults, and belittlement of Plaintiff because of and/or arising from Plaintiff's disability and/or Defendant and/or its agents and/or manger's perception of the same during the period of Plaintiff's employment as described above were and Plaintiff's complaints and protestation of the same to Defendant, as described above, directly caused, motivated, and resulted in Defendant's termination of Plaintiff's employment.

137.    The acts and actions taken by Defendant, including Defendant's including Defendant's failure and/or refusal to engage Plaintiff in an interactive process to provide Plaintiff an appropriate and medically necessary workplace accommodation, refusal to provide Plaintiff with and/or honor and implement Plaintiff's medically necessary workplace accommodation and harassment and belittlement of Plaintiff because of and/or arising from Plaintiff's disability and/or Defendant and/or its agents and/or manger's perception of the same during the period of Plaintiff's employment as described above were and Defendant's termination of Plaintiff's employment arising Plaintiff's complaints and protestation to Defendant relating to and arising from the same, was hostile, severe, outrageous, discriminatory, and retaliatory against Plaintiff and were taken and carried out by Defendant with malice or reckless indifference to Plaintiff's workplace rights under the MFEPA.

28

138.     As a direct and proximate result of Defendant's hostile, severe, discriminatory, and retaliatory actions taken against Plaintiff because of his disability, Defendant's failure and/or refusal to engage Plaintiff in an interactive process to provide Plaintiff an appropriate and medically necessary workplace accommodation requests for his medically necessary workplace accommodation, and for engaging in a protected activity of complaining and protesting the same, Defendant violated Plaintiff's rights under the MFEPA in the form of (i) unlawful disability discrimination; (ii) unlawful refusal to engage in an interactive process; (iii) unlawful denial of a medically necessary workplace accommodation;  (iv) disability-based hostile work environment; and (v) unlawful retaliation / termination of Plaintiff's employment.

139.     Defendant's acts of discrimination,  harassment / hostile work environment, and retaliation/termination have directly and proximately caused Plaintiff to suffer substantial emotional damages, including anxiety, panic attacks, lack of sleep, nightmares, and general sadness, resulting in Plaintiff withdrawing and declining opportunities to engage in social and other previously preferred activities, financial loss arising including lost wages and future medical expenses associated with mental health treatment to address emotional damages caused by Defendant.

## COUNT VI
## VIOLATION OF THE DCHRA
**(Discrimination Based on Disability / Failure to Provide Reasonable Accommodation / Retaliation for Requesting Reasonable Accommodation)**

140.     Plaintiff re-alleges and incorporates by reference each allegation in the foregoing paragraphs.

141.     At all relevant times, Defendant was Plaintiff's employer within the meaning of the DCHRA.

142.     At all relevant times, Plaintiff was Defendant's employee within the meaning

of the DCHRA.

142.    At all relevant times, the DCHRA prohibited Plaintiff from discharging or otherwise discriminating against Plaintiff, a qualified employee, on the basis of actual or perceived disability.

143.    At all relevant times, Plaintiff had and continues to have a disability within the meaning of the DCHRA.

144.    At all relevant times, Defendant had actual knowledge that Plaintiff had a disability within the meaning of the DCHRA.

145.    From the period March 2020 through the date Defendant made its final decision terminating Plaintiff's employment on August 25, 2021, Defendant had actual knowledge that with the assistance of Plaintiff's expressly requested medically necessary reasonable accommodations, Plaintiff was qualified for and fully capable of performing all essential functions of his job duties for the benefit of Defendant and its client(s) at a level meeting or exceeding all essential requirements of his job duties, with his expressly requested and medically necessary reasonable accommodation, within the meaning of the DCHRA.

146.    The DCHRA prohibits an employer from refusing to make a reasonable accommodation to an otherwise qualified employee with a disability.

147.    The DCHRA requires and required Defendant to engage in an interactive process actively and voluntarily upon notice of his disability and/or requested and medically necessary accommodation to implement a reasonable and medically necessary reasonable accommodation that permits Plaintiff to perform the essential functions of his job duties for the benefit of Defendant and its clients(s) in a manner meeting the workplace needs of Defendant and its client(s).

148.    From the period March 2020 through the date Defendant made its final decision terminating Plaintiff's employment on August 25, 2021, Defendant denied Plaintiff his medically necessary reasonable accommodation and willfully refused to engage in the interactive process with Plaintiff.

149.    From the period March 2020 through the date Defendant made its final decision terminating Plaintiff's employment on August 25, 2021, Plaintiff engaged in a protected activity by requesting reasonable accommodations for his disability from Defendant.

150.    From the period March 2020 through the date Defendant made its final decision terminating Plaintiff's employment on August 25, 2021, Defendant failed and/or refused to engage in an interactive process to provide Plaintiff an appropriate and medically necessary workplace accommodation, provide Plaintiff with and/or honor and implement Plaintiff's medically necessary workplace accommodation and harassment, insults, and belittlement of Plaintiff because of and/or arising from Plaintiff's disability and/or Defendant and/or its agents and/or manger's perception of the same during the period of Plaintiff's employment as described above were (i) unwelcome, (i) were of hostile and discriminatory in nature; (iii) were severe, pervasive, and did, in fact, alter the conditions of Plaintiff's employment with Defendant to create a hostile and abusive working environment, and (4) were known, permitted, and imputable to Defendant.

151.    The acts and actions taken by Defendant, including Defendant's failure and/or refusal to engage Plaintiff in an interactive process to provide Plaintiff an appropriate and medically necessary workplace accommodation, refusal to provide Plaintiff with and/or honor and implement Plaintiff's medically necessary workplace accommodation and harassment, insults, and belittlement of Plaintiff because of and/or arising from Plaintiff's disability and/or

Defendant and/or its agents and/or manger's perception of the same during the period of Plaintiff's employment as described above were known and reasonably foreseeable to Defendant based on Defendant's failure to honor and/or adhere to Plaintiff's request for a medically necessary reasonable workplace accommodation and/or to take reasonable and/or effective action to stop or prevent Defendant and/or its agents and/or managers acts and actions and/or to reasonably protect Plaintiff from the same.

152.    The acts and actions taken by Defendant, including Defendant's failure and/or refusal to engage Plaintiff in an interactive process to provide Plaintiff an appropriate and medically necessary workplace accommodation, refusal to provide Plaintiff with and/or honor and implement Plaintiff's medically necessary workplace accommodation and harassment, insults, and belittlement of Plaintiff because of and/or arising from Plaintiff's disability and/or Defendant and/or its agents and/or manger's perception of the same during the period of Plaintiff's employment as described above would not have occurred but for the fact Plaintiff is an individual with a diagnosed with a disability that required an expressly requested medically necessary reasonable workplace accommodation to perform the basic and essential functions of his job duties while employed by Defendant.

153.    The acts and actions taken by Defendant, including Defendant's including Defendant's failure and/or refusal to engage Plaintiff in an interactive process to provide Plaintiff an appropriate and medically necessary workplace accommodation, refusal to provide Plaintiff with and/or honor and implement Plaintiff's medically necessary workplace accommodation and harassment, insults, and belittlement of Plaintiff because of and/or arising from Plaintiff's disability and/or Defendant and/or its agents and/or manger's perception of the same during the

period of Plaintiff's employment as described above made Plaintiff think and feel that his work environment with Defendant was hostile and/or abusive on the basis of his disability.

154.    The acts and actions taken by Defendant, including Defendant's refusal to provide Plaintiff with and/or honor and implement Plaintiff's medically necessary workplace accommodation and harassment, insults, and belittlement of Plaintiff because of and/or arising from Plaintiff's disability and/or Defendant and/or its agents and/or manger's perception of the same during the period of Plaintiff's employment as described above were objectively hostile and/or abusive on the basis of disability to a reasonable person.

155.    The acts and actions taken by Defendant, including Defendant's including Defendant's failure and/or refusal to engage Plaintiff in an interactive process to provide Plaintiff an appropriate and medically necessary workplace accommodation, refusal to provide Plaintiff with and/or honor and implement Plaintiff's medically necessary workplace accommodation and harassment, insults, and belittlement of Plaintiff because of and/or arising from Plaintiff's disability and/or Defendant and/or its agents and/or manger's perception of the same during the period of Plaintiff's employment as described above were and Plaintiff's complaints and protestation of the same to Defendant, as described above, directly caused, motivated, and resulted in Defendant's termination of Plaintiff's employment.

156.    The acts and actions taken by Defendant, including Defendant's including Defendant's failure and/or refusal to engage Plaintiff in an interactive process to provide Plaintiff an appropriate and medically necessary workplace accommodation, refusal to provide Plaintiff with and/or honor and implement Plaintiff's medically necessary workplace accommodation and harassment and belittlement of Plaintiff because of and/or arising from Plaintiff's disability and/or Defendant and/or its agents and/or manger's perception of the same during the period of

Plaintiff's employment as described above were and Defendant's termination of Plaintiff's employment arising Plaintiff's complaints and protestation to Defendant relating to and arising from the same, was hostile, severe, outrageous, discriminatory, and retaliatory against Plaintiff and were taken and carried out by Defendant with malice or reckless indifference to Plaintiff's workplace rights under the DCHRA.

157.   As a direct and proximate result of Defendant's hostile, severe, discriminatory, and retaliatory actions taken against Plaintiff because of his disability, Defendant's failure and/or refusal to engage Plaintiff in an interactive process to provide Plaintiff an appropriate and medically necessary workplace accommodation requests for his medically necessary workplace accommodation, and for engaging in a protected activity of complaining and protesting the same, Defendant violated Plaintiff's rights under the DCHRA in the form of (i) unlawful disability discrimination; (ii) unlawful refusal to engage in an interactive process; (iii) unlawful denial of a medically necessary workplace accommodation;  (iv) disability-based hostile work environment; and (v) unlawful retaliation / termination of Plaintiff's employment.

158.   Defendant's acts of discrimination,  harassment / hostile work environment, and retaliation/termination have directly and proximately caused Plaintiff to suffer substantial emotional damages, including anxiety, panic attacks, lack of sleep, nightmares, and general sadness, resulting in Plaintiff withdrawing and declining opportunities to engage in social and other previously preferred activities, financial loss arising including lost wages and future medical expenses associated with mental health treatment to address emotional damages caused by Defendant.

<u>**COUNT VII**</u>
**VIOLATION OF THE DCSLA**
**(Discrimination Based on Use of Sick Leave – Retaliation / Termination)**

159.    Plaintiff re-alleges and incorporates by reference each allegation in the foregoing paragraphs.

160.    At all times relevant, Defendant was Plaintiff's employer pursuant to the DCSLA.

161.    At all times relevant, Plaintiff was Defendant's employee pursuant to the DCSLA.

162.    At all times relevant, Defendant was prohibited from interfering with, restraining, or denying Plaintiff's exercise or attempt to exercise, the right to receive sick leave pursuant to the DCSLA.

163.    Defendant further interfered with, restrained, or denied Plaintiff's exercise or attempt to exercise his right to receive sick leave by unlawfully attempting to pressure and/or cause Plaintiff to perform employment duties while out on sick leave, tease, embarrass, marginalize, and/or belittle Plaintiff for needing, requesting, and/or taking sick leave, and terminating Plaintiff because he requested and/or took sick leave.

164.    Defendant's violations of the DCSLA were repeated, willful, intentional and in bad faith.

165.    As a result of Defendant's willful violations of the DCSLA, Plaintiff suffered substantial damages, including, but not limited to, loss of income and benefits, pain and suffering, emotional distress, and humiliation.

166.    Defendant's violations of the DCSLA have directly and proximately caused Plaintiff to suffer substantial emotional damages, including anxiety, panic attacks, lack of sleep, nightmares, and general sadness, resulting in Plaintiff withdrawing and declining opportunities to engage in social and other previously preferred activities, financial loss arising including lost

wages and future medical expenses associated with mental health treatment to address emotional damages caused by Defendant.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all facts and issues so triable.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests this Court to grant him the relief requested as follows:

(a)     Enter a judgment for Plaintiff and against Defendant on all Counts;

(b)     Award Plaintiff damages for Defendant's violations of the FMLA, ADA, Rehab Act; MFEPA, DCHRA, and the DCSLA including back pay, front pay, compensatory damages, liquidated damages, and punitive damages;

(c)     Award Plaintiff pre- and post-judgment interest on such amounts;

(d)     Award Plaintiff attorneys' fees, reasonable expert witness fees, and other costs of the action;

(e)     Award Plaintiff reinstatement to his employment position with Defendant; and

(f)     Such other relief that the Court or a jury deems proper and just.

Dated: September 25, 2022                    Respectfully submitted,


 _/s/  Gregg C. Greenberg_____
Gregg C. Greenberg, Bar No. 17291
Zipin, Amster & Greenberg, LLC
8757 Georgia Avenue, Suite 400
Silver Spring, Maryland 20910
Phone:  301-587-9373
Email:  GGreenberg@ZAGFIRM.COM

*Counsel for Plaintiff*